UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| E. N. BISSO & SON, INC. | * | CIVIL ACTION |
| VERUS | * | NO. 19-cv-14666 |
| M/V DONNA J. BOUCHARD, her tackle, | * | SECTION "E" (1) |
| Furniture, apparel, appurtenances, *etc. in* | | |
| *rem*, and the Barge B. NO. 272, her tackle, | * | JUDGE MORGAN |
| Furniture, apparel, appurtenances, *etc. in* | | |
| *rem* and BOUCHARD TRANSPORTATION | * | MAGISTRATE VAN MEERVELD |
| CO., INC. *in personam* | | |

\*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR INTERLOCUTORY SALE**

**MAY IT PLEASE THE COURT:**

Tug DONNA J. BOUCHARD Corp., as owner and claimant of the M/V DONNA

J. BOUCHARD, *in rem*, and B. No. 272 Corp., as owner and claimant of the Barge B.

No. 272, *in rem*, both subject to their restricted appearance pursuant to Rule E(8) of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions to

the Federal Rules of Civil Procedure ("Supplemental Admiralty Rules"), file this

Opposition to the Motion for Interlocutory Sale [R. Doc. 41] filed by plaintiff, E.N. Bisso

& Son, Inc. ("Bisso").

Bisso fails to carry its burden of proving the necessary critical elements to support

an interlocutory sale of the M/V DONNA J. BOUCHARD and Barge B. No. 272 (the

"Vessels") under Rule E(9) of the Supplemental Admiralty Rules. Bisso has failed to prove that the Vessels are perishable or subject to deterioration, decay or injury. Nor has Bisso proven that the expense of maintaining the Vessels at Port Fourchon renders the cost of maintaining the vessel under arrest excessive. In fact, these costs are miniscule in comparison to the value of the Vessels, which Bisso acknowledges is over $100 million. And finally, there has been no unreasonable delay. It has only been a little over two (2) months since the Vessels were arrested on December 18, 2020, and the Vessels' owners' representative are and have been actively working to obtain the financing necessary to secure the Vessels' release and/or resolve these claims.

Because Bisso's Motion for Interlocutory Sale cannot satisfy any of the requirements under Supplemental Admiralty Rule E(9), Bisso's Motion should be denied.

### Law and Argument

Rule E(9)(a) of the Supplemental Admiralty Rules provides for the interlocutory sale of seized property as follows:

> (i) On application of a party, the marshal, or other person having custody of the property, the court _may_ order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:
>
> > (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> >
> > (B) the expense of keeping the property is excessive or disproportionate; or

> > (C) there is an unreasonable delay in securing
> > release of the property.

> > (ii) In the circumstances described in Rule E(9)(a)(i), the
> > court, on motion by a defendant or a person filing a statement
> > of interest or right under Rule C(6), may order that the
> > property, rather than being sold, be delivered to the movant
> > upon giving security under these rules. [Emphasis added.]

The movant has the burden of proof and must "demonstrate that at least one of the [three] conditions listed in Rule E(9)(b) [now E(9)(a)] is present before the sale of the vessel will be ordered." *Triton Container Int'l v. Baltic Shipping Co.*, 1995 U.S. Dist. LEXIS 4856, at *4 (E.D. La. Apr. 11, 1995) (Sear, J.). But "[e]ven if they meet this burden, the Rule, by using the word 'may', clearly indicates that ordering the sale is not mandatory." *Id.* As explained by the Seventh Circuit, "[b]ecause the rule does not state any criteria to guide the judge … [the judge] can range widely in deciding what factors to consider … [I]n other words, (the judge) has considerable discretion." *United States v. Approximately 81, 454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) (affirming the district court's exercise of discretion in denying a motion for interlocutory sale under the identical wording of Supplemental Rule G).

**A.    The Vessels are not perishable, or liable to deterioration, decay, or injury by being detained in custody**

The main substance of Bisso's contentions appears to be that the Vessels presented a potential risk of harm to the property and lives of others because they were anchored at Nine Mile Anchorage near busy navigation lanes of the Mississippi River, exposing the Vessels to risk of breakaway, collision with other vessels, and "other potential disasters." Even if true – and Bisso provides no proof of such danger – that issue is no longer

3

relevant. As Bisso acknowledges, the Coast Guard moved the Vessels on February 24

and 25, 2020 to a safe, secure and remote location the Coast Guard selected at Yellow Fin

Marine on Bayou Lafourche in Fourchon, Louisiana. The Coast Guard is currently

conducting a pollution assessment to determine how much residual cargo and other

petroleum products may be removed from the Vessels, but this removal is not scheduled

at this time.  The Coast Guard has confirmed that after the cargo/petroleum removal, if

any, is conducted, the Vessels can stay at Yellow Fin Marine. As such, the Vessels do not

present a danger to anyone at this present location.[1]

Bisso has also failed to show that the Vessels themselves are perishable, or subject

to deterioration, decay or injury in any way. In *Boland Marine & Mfg. Co. v. M/V A.G.*

*Navajo*, 2002 U.S. Dist. LEXIS 22737 (E.D. La. Nov. 22, 2002), the case relied upon by

Bisso, the vessel was moored near two floating derrick barges in a busy waterway, there

was no crew on board, no maintenance work had been performed lately, and a marine

surveyor reported that the aft main deck and aft controls were in poor condition. *Id.* at *8.

The vessel owner conceded that the vessel was not operating and that it had no plans to

use it in the immediate future. *Id.* at *8-9.

---

[1] Injury to others is not a relevant consideration under Rule E(9)(a)(i)(A), which tells the court to look at whether "**the attached or arrested property** is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action." (emphasis added). The clear language of the statute indicates that any "deterioration, decay, or injury" must be to the Vessels themselves, not to the world at large. For example, "Plaintiff alleges that 'the vessel's situation ha[s] deteriorated as additional creditors have emerged who seek supplementary warrants of arrest.' Even if true, there is no allegation that the *property* itself is deteriorating." *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279, at *5 (S.D. Fla. Apr. 1, 2008) (emphasis in original) (denying motion for interlocutory sale of vessel).

None of those conditions exist here. The Vessels, both of which were built in 2016, are anchored in a safe berth selected by the Coast Guard in a far less busy waterway; both have crew onboard performing ordinary maintenance; and the Vessels' owners and their representative are working to secure financing to obtain their release from arrest with plans to put the Vessels back into commercial use. Bisso has produced no evidence – none whatsoever – that the Vessels are perishable, deteriorating or decaying as a result of the current arrest. Bisso offers only conjecture, bluster and conclusory assertions. Contrary to Bisso's bald assertions, the Coast Guard recently performed inspections on the Vessels and it is understood that it found no significant deficiencies. Undersigned counsel has requested those reports from the Coast Guard and intends to present them to the Court before the hearing on the present motion.

An interlocutory sale cannot be ordered solely on speculation and conjecture. But that is all Bisso has offered here. Bisso has failed to offer *evidence* that the Vessels are perishable or subject to deterioration or decay or injury as required by Rule E (9)(a)(i)(A). As such, Bisso has failed to carry its burden of proving grounds for an interlocutory sale under Rule E(9)(a)(i)(A).

**B.    The expense of keeping the Vessels is not excessive or disproportionate**

As it relates to Rule E(9)(a)(i)(B), Bisso bears the burden of proof to establish that costs of maintaining the vessel under attachment are excessive or disproportionate. *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279 (S.D. Fla. Apr. 1, 2008). Bisso has submitted invoices totaling $87,720 in *custodia legis* expenses since the arrest of the Vessels, consisting of substitute custodian charges, launch services charges and marshal

fees. But these are all expenses that have *already been incurred* and will not be reduced or avoided by an early sale of the Vessels. These are costs that are inherent in Bisso exercising the extraordinary remedy under Supplemental Admiralty Rules of seizing a large and valuable asset, such as the Vessels. Such past costs are not directly relevant to whether the Court should order an interlocutory sale under Rule E(9)(a)(i)(B).

More relevant to this motion is the fact that Bisso provides *no evidence* that it will incur any expenses in the future to maintain the Vessels while under arrest. Bisso has also failed to submit any proof of the amount of actual expenses that it may incur in connection with maintaining the Vessels while in custody going forward. Bisso makes only vague, unsupported references to ongoing obligations to the crew and the Coast Guard's work to reduce or eliminate the potential discharge of hydrocarbons remaining on board the Vessels. But this is all irrelevant. All Coast Guard expenses for towage of the Vessels to Yellow Fin Marine – already incurred --  dockage and ROB removal is covered by National Pollution Funds Center.  The Funds Center will then recover those expenses direct from the Vessels' owners or under their Certificate of Financial Responsibility ("COFR"), a third party guarantee to pay oil pollution-related charges. The Coast Guard has confirmed to undersigned counsel that the expenses it has and will incur related to the Vessels are not *custodia legis* expenses.  Clearly, the Coast Guard has not made any claim in this litigation for recovery of those expenses.

Bisso has submitted evidence of $87,720 in *custodia legis* expenses—which have already been incurred. But this evidence does not and cannot support a finding that the costs to maintain the Vessels under attachment are excessive. As one court has stated:

> The plaintiff represents that it expended approximately $193,000 to have the Equipment removed from the vessel and placed in storage. Counting Marshal's fees and fees of the substitute custodian, the plaintiff states it has spent over
>
> $210,000 through December 31. Going forward (indeed, beginning September 2009), the monthly cost is a stable $5,092.
>
> The plaintiff does not explain the relevance of its sunk costs, incurred before it moved for interlocutory sale, in determining whether the expense is excessive or disproportionate. Certainly no order of sale can recoup the plaintiff's past expenditures. Absent authority or explanation, which the plaintiff does not provide, the <u>Court limits its consideration to the future expenses of keeping the property</u>.

*Adams Offshore, Ltd. v. Con-Dive, LLC*, 2010 U.S. Dist. LEXIS 7922, at *3-4 (S.D. Ala. Feb. 1, 2010) (denying sale of a saturation and diving system). (Emphasis added).

Bisso has failed to demonstrate what the *future* seizure costs will be, or that Bisso will incur any future seizure costs, much less that they will be excessive or disproportionate to the claims asserted or the value of the Vessels.

Even considering, for argument's sake, that Bisso can actually identify and substantiate some anticipated additional *custodia legis* expenses it will incur maintaining the Vessels under arrest, Bisso cannot meet its burden of proof to establish that the costs of maintaining the vessel under arrest are disproportional or excessive. The Bisso claim in this case totals more than $500,000.  Additionally, Crescent/Cooper Smith has asserted claims of about $40,000; Louisiana Machine has asserted a claim of over $77,000; Belle Chasse Marine has asserted a claim of about $360,000; and Boland has asserted a claim of $1,452,540.  Thus, these claims total more than $2,400,000.  Although the Vessels'

owners contend many of these claims are not valid or accurate or properly asserted against the Vessels *in rem*, the total claims asserted in this litigation are substantially more than the *custodia legis* services actually incurred by Bisso.  Bisso's past *custodia legis* expenses are less than 4% of the total claims.

Clearly, Bisso has failed to show that the future *custodia legis* expenses, if any, will be excessive or disproportionate to the plaintiff and intervenors' claims exceeding $2,400,000. Moreover, it is indisputable that any future *custodia legis* expenses, whatever they may be, will not be excessive or disproportionate compared to the value of the Vessels, which Bisso acknowledges exceeds $100,000,000.

"The rule does not specify whether disproportionateness is measured against the amount sought or the value of the vessel. Some courts have indicated that the value of the vessel may be the relevant comparitor." *John W. Stone Oil Distrib., L.L.C. v. M/V Lucy*, 2009 U.S. Dist. LEXIS 114086, at *2 n.2 (E.D. La. Nov. 20, 2009) (Berrigan, J.) (though ultimately finding that "the expense of keeping the vessels is excessive and disproportionate when compared to the amounts of the liens…"). *See First Am. Title Ins. Co. v. M/V Golden Eagle III*, 2014 U.S. Dist. LEXIS 108995, at *6 n.2 (E.D. La. Aug. 7, 2014) (Barbier, J.) ("Here, given the low value of the vessel relative to the amount sought, this interpretation of the rule strengthens the Court's finding that the expense of maintenance is excessive or disproportionate."); *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279, at *5 (S.D. Fla. Apr. 1, 2008) (considering the plaintiff's argument that "the expense of keeping the vessel is disproportionate to its value," but ultimately dismissing the motion for lack of factual support); *Pee Dee State Bank v. The F/V Wild*

*Turkey*, 1991 U.S. Dist. LEXIS 20288 (D.S.C. Oct. 9, 1991) (comparing the custodial costs of the vessel with the market value of the vessel before ordering an interlocutory sale).

In *Boland Marine & Mfg. Co. v. M/V A.G. Navajo*, 2002 U.S. Dist. LEXIS 22737 (E.D. La. Nov. 22, 2002), this Court specifically rejected the movants argument that the cost of maintaining the vessel was excessive or disproportionate where the plaintiffs failed to show that the continuing daily costs were "excessive or disproportionate to the vessel's value." *Id.* at *10. Similarly, in *Louisiana International Marine v. The Drilling Rig Atlas Century*, 2011 WL 76337219 (S.D. Tex. November 21, 2011), the rig at issue was valued at $32 million. The plaintiff's claim was $859,100.00. The Plaintiff spent $50,000.00 to detain the rig and anticipated monthly custodian costs of $18,000.00 to maintain the vessel under arrest. The court noted that although these costs could become substantial over time, the custodian costs were only 12% of plaintiff's claim and 2% of the Rig's value. Accordingly, the court found that the custodian costs were not excessive or disproportional. In *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2010 U.S. Dist. LEXIS 7922, at *4 (S.D. Ala. Feb. 1, 2010), the court denied the interlocutory sale of a saturation and diving system "given the plaintiff's admission that even the forced liquidation value of the Equipment is at least $ 2,500,000, expenses of $ 51,000 (or barely 2%) cannot easily be called disproportionate, and the plaintiff identifies no authority supporting a contrary conclusion."

As Bisso acknowledges in its Motion, the Vessels have a "conservative estimate" of $100 million fair market value. Moreover, neither is subject to a mortgage. It is

difficult to envision any future *custodia legis* expenses for these Vessels coming even close to being considered disproportionate to the very significant value of the Vessels. As an example, the $87,720 in previously incurred *custodia legis* expenses represents 0.00087% of the Vessels' value. This certainly is not a case where lienholders continue to incur *custodia legis* expenses "with uncertain hope of reimbursement." *Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie,* 663 F.2d 1338, 1342 (5th Cir. 1981). Thus, even if Bisso faces significant *custodia legis* expenses over the next several months, which it has not shown, it undoubtedly will recover those sums if the Vessels have to be sold at that point.

Ultimately, Bisso has failed to offer evidence proving that the expense of keeping the Vessels is excessive or disproportionate as required by Rule E(9)(a)(i)(B).

**C.     There has not been an unreasonable delay in securing release of the Vessels**

The Vessels were arrested on December 18, 2019. Without citing any direct authority supporting its contention, Bisso contends that the delay in securing release of the Vessels in a little over 2 months is somehow unreasonable. The cases cited by Bisso do not support that contention, which lacks merit.

There is simply no basis to conclude that the Vessels' owners' 2 month delay in securing the release of the Vessels has been unreasonable. "The parties do not cite, and this Court cannot find, a case in which a court found a delay of less than three and a half months to be unreasonable." *Samsun Logix Corp. v. Parkroad Corp.*, 2009 U.S. Dist. LEXIS 7602, at *12 (W.D. La. Feb. 3, 2009). As another court put it, "[a] three month delay, without more, is insufficient to merit interlocutory sale under Supplemental Rule

E(9)(b)." *Gyasi v. M/V "Andre"*, 2008 U.S. Dist. LEXIS 30279, at *5 (S.D. Fla. Apr. 1, 2008). "As a general rule, defendants are given at least four months to bond a vessel absent some other considerations." *John W. Stone Oil Distrib., L.L.C. v. M/V Lucy*, 2009 U.S. Dist. LEXIS 114086, at *2 (E.D. La. Nov. 20, 2009) (citing cases).

Bisso contends that the "imminent and substantial danger caused by the Bouchard Interests in leaving the Vessels undermanned and exposed to dangers presents such 'other considerations.'" But as discussed above, Bisso offers no evidence of any such dangers. To the contrary, the Vessels are presently in a safe and secure location selected by the Coast Guard, with crews aboard performing necessary maintenance.

A review of cases decided on unreasonable delay in securing release of the property almost universally found that another factor under Rule E(9)(i) also was present. *See Merchants Nat'l Bank v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1342 (5th Cir. 1981); *John W. Stone Oil Distrib.*, *supra* ("the court finds the expense of keeping the vessels is excessive and disproportionate); *Colonna's Shipyard, Inc. v. U.S.A.F. General Hoyt S. Vandenberg*, 584 F.Supp. 2d 862 (E.D. Va. 2008) ("the Court finds Colanna's has provided sufficient evidence to establish both that storage costs have become excessive and that there has been unreasonable delay in securing the vessel's release"); *Ferrous Financial Services Co. v. O/S ARCTIC PRODUCER*, 567 F.Supp. 400 (W.D. Wa. 1983) ("The Court makes no finding with respect to the contention of deterioration but finds that there is an unreasonable delay in securing the release of defendant vessel and that the expense of keeping said vessel is excessive"); *Neptune Orient Lines, Ltd. v. Halla Merchant Marine Co., Ltd.*, 1998 WL 128993, at *6 (E.D. La 1998) ("further delay

of the sale would be unreasonable. The vessel is subject to deterioration, which would reduce its value and incur additional custodia legis and other maintenance expenses").

Moreover, this is not a case where the vessel owner made no effort to secure the vessel's release. *See, e.g., Merchants Nat. Bank of Mobile*, 663 F.2d at 1342 (affirming district court's determination of unreasonable delay where "[t]he owners of the vessels never posted bond, entered into any stipulation or otherwise attempted to secure the release of the vessels during the eight months after the seizure"); *Boland Marine & Mfg. Co. v. M/V A.G. Navajo*, *supra*, at *6-7; *Prosperity Bank v. Tom's Marine & Salvage, LLC,* 2020 U.S. Dist. LEXIS 26811, at *6 (E.D. La. Feb. 18, 2020). In contrast, where the vessel's owner took active measures to secure the release of the vessel, courts have found delay reasonable. *Boland Marine*, 2002 U.S. Dist. LEXIS 22737, at *6 (citing *Action Marine, Inc. v. M/V NORSEMAN*, 1997 U.S. Dist. LEXIS 5898, at *3 (E.D. La. Apr. 28, 1997)) and *Entron, Ltd. v. Crane Vessel Titan 2*, 1995 U.S. Lexis 6005, *8-9 (E.D. La. 1995)).

In this matter, the evidence establishes that the Vessels' owners' representatives are actively working to obtain the financing needed to secure the Vessels' release and/or resolve these claims (R. Doc. 36-2, Declaration of Martin S. Bouchard, ¶5). As Bisso itself noted in its motion, at the February 18, 2020 hearing on the Emergency Motion before this Court, Mr. Morton Bouchard represented to this Court that the Bouchard Interests were attempting to secure financing to fund crew costs and to satisfy amounts owed by the Bouchard Interests to Bisso and the other claimants. And in a similar proceeding before the United States District Court for Southern District of Texas,

"Bollinger Amelia Repair LLC v. Bouchard Transportation Co., Inc., *et al,* Civil Action

No. 2:19-cv-00370," Mr. Bouchard submitted a Sworn Declaration last week confirming

that he has been in negotiations to recapitalize the Bouchard Interests, is in the final

stages of negotiation for immediate financing, and expects the negotiations to result in the

Bouchard Interests being funded later this month. (Exhibit A, p. 3, ¶10).

In the Bollinger Amelia case, the Court just last week, on February 27, 2020,

issued the attached Order (R. Doc. 35) denying plaintiffs' Motion for an Interlocutory

Sale of the Barge B. No. 240. (Exhibit B).  The Court found the expense of keeping the

barge was not disproportionate to the value of plaintiffs' claim or the value of the barge

and, further, that there was not an unreasonable delay in securing release of the barge

because less than three months had passed since the arrest.  The Court noted that

defendants are typically given "four or more months before a delay is considered

unreasonable."  *Id.* pg. 2.

"A motion for interlocutory sale is not typically granted until enough time has

passed to allow defendants to provide a bond to secure release of the vessel." *Bank of Rio

Vista v. Vessel Captain Pete*, 2004 WL 2330704 (N.D. Ca. 2004). In this case, only

slightly more than two months have elapsed since the arrest, and the Vessels' owners'

representatives are actively working to resolve their financial issues and this arrest. Bisso

has failed to prove unreasonable delay justifying an interlocutory sale under Rule

E(9)(a)(i)(C).

**Conclusion**

In sum, Bisso has failed to carry its burden of proving any of the grounds for an interlocutory sale of the Vessels under Supplemental Rule E(9)(a). Bisso has failed to show that the Vessels are perishable or at risk of deterioration, decay or injury during this arrest. To the contrary, the Vessels are presently at a safe and secure location in Port Fourchon that was selected by the Coast Guard to avoid a potential environmental threat, with a crew onboard performing ordinary maintenance.

Nor has Bisso shown that it will incur any *custodia legis* costs in the future or what *custodia legis* will be incurred going forward, or that those costs will be disproportionate to the value of the claims asserted in this litigation or the value of the Vessels.  Moreover, Bisso acknowledges that the Vessels are worth far, far more than all the claims asserted in this case and all potential *custodia legis* expenses.  It is uncontroverted that future *custodia legis* costs can be satisfied with certainty if the Vessels have to be sold at some point in the future.

Finally, the Vessels' owners' two month delay in securing the Vessels' release is not unreasonable as a matter of law. Courts uniformly give vessel owners at least four months or more to secure a  vessel's release, particularly when, as here, the Vessels' owners' representatives are actively working to obtain the funding needed to secure the Vessels' release and/or resolve the claims.

For all of these reasons, Bisso's Motion for Interlocutory Sale [R. Doc. 41] should be denied.

Respectfully submitted,
MURPHY, ROGERS, SLOSS,
 GAMBEL & TOMPKINS

*/s/ Robert H. Murphy*

_____

Robert H. Murphy (#9850)
rmurphy@mrsnola.com
Peter B. Sloss (#17142)
psloss@mrsnola.com
Timothy D. DePaula (#31699)
tdepaula@mrsnola.com
701 Poydras Street
Suite 400, Hancock Whitney Center
New Orleans, LA   70139
Telephone:  (504) 523-0400
Facsimile:  (504) 523-5574
*Attorneys for Tug DONNA J. BOUCHARD*
*Corp. as owner of the M/V DONNA J.*
*BOUCHARD, in rem, making a restricted*
*appearance pursuant to Rule E(8) of the*
*Federal Rules of Civil Procedure, and B. No.*
*272 Corp., as owner of the Barge B. No. 272, in*
*rem, making a restricted appearance pursuant*
*to Rule E(8) of the Federal Rules of Civil*
*Procedure*

5844

4831-3352-3638, v. 1