UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E.N. BISSO & SON, INC.,<br>　　Plaintiff | CIVIL DOCKET |
| VERSUS | NO. 19-14666 |
| DONNA J. BOUCHARD M/V, ET AL.,<br>　　Defendants | SECTION: "E" (1) |

### ORDER AND REASONS

Before the Court is Plaintiff E.N. Bisso & Son, Inc.'s (E.N. Bisso's) Motion for Interlocutory Sale.[1] Defendants oppose this motion.[2] E.N. Bisso filed a reply.[3] The Court heard oral argument on the Motion for Interlocutory Sale on March 5, 2020.[4] For the following reasons, the Motion for Interlocutory Sale is **GRANTED**.

### BACKGROUND

This is an admiralty and maritime action to foreclose upon a maritime lien for towage services provided to the M/V DONNA J. BOUCHARD and Barge B. NO. 272 (together, the "Vessels") and for breach of a maritime contract or suit on an open account. On December 18, 2019, E.N. Bisso filed its Verified Complaint[5] along with an Emergency Motion for Issuance of a Warrant of Arrest of the Vessels[6] and an Emergency Motion to Appoint or Substitute a Custodian of the Arrested Vessels.[7] On that same date, the Court

---

[1] R. Doc. 41.
[2] R. Doc. 47.
[3] R. Doc. 53.
[4] R. Doc. 55.
[5] R. Doc. 1.
[6] R. Doc. 2.
[7] R. Doc. 3.

1

issued warrants of arrest on the Vessels[8] and granted E.N. Bisso's motion appointing Blue Marine Security, LLC ("Blue Marine") as the custodian of the arrested Vessels.[9]

On January 13, 2020, E.N. Bisso filed a motion to appoint Tug DONNA J. BOUCHARD Corp., through Captain Richard Bates and Relief Captain Walter Burns of the M/V DONNA J. BOUCHARD, as substitute custodian of the arrested Vessels.[10] On January 15, 2020, the Court granted this motion.[11]

On February 12, 2020, E.N. Bisso filed an Emergency Motion To Compel Tug Donna Bouchard Corp. and/or the Declarant Mr. Morton S. Bouchard, III To Appear and Show Cause Why the Substitute Custodian Has Failed To Fulfill its Obligations.[12] E.N. Bisso represented that, on February 5, 2020, the U.S. Coast Guard inspected the Vessels and discovered several impairments.[13] Specifically, the Coast Guard found the Vessels suffered from a malfunctioning emergency electrical system and an anticipated departure of crewmembers necessary to operate the Vessels due to Defendants' failures to pay crewmembers.[14] In light of these impairments, the Coast Guard ordered the master of the M/V DONNA J. BOUCHARD and Bouchard Transportation to moor the Vessels to a dock until required repairs are completed and relief crewmembers are provided, and ordered the master of the M/V DONNA J. BOUCHARD and Bouchard Transportation to submit a plan to carry out those directives by February 7, 2020.[15] E.N. Bisso represented that as of February 12, 2020, the Vessels had not been moored and no plan had been submitted

---

[8] R. Docs. 8 and 9.
[9] R. Docs. 12.
[10] R. Doc. 18.
[11] R. Doc. 19.
[12] R. Doc. 30.
[13] *Id*. at 4 (citing R. Doc. 30-3 (Coast Guard Captain of the Port Order 075-20)).
[14] Id. (citing R. Doc. 30-3 (Coast Guard Captain of the Port Order 075-20)).
[15] *Id*. (citing R. Doc. 30-3 (Coast Guard Captain of the Port Order 075-20)).

to the Coast Guard.[16] The Court granted[17] the motion and held an emergency hearing on February 18, 2020.[18]

After the February 18, 2020 hearing, the Coast Guard took custody of the Vessels and moved the them to Fourchon Shorebase in Bayou Laforche, Louisiana, where the oil on board the Vessels is scheduled to be removed in mid-March.[19]

## **LAW AND ANALYSIS**

Supplemental Admiralty Rule E(9)(a)(i) provides, in relevant part:

[T]he court may order all or part of the property sold—with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court—if:

> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or disproportionate; or
>
> (C) there is an unreasonable delay in securing release of the property.[20]

"In order to prevail, the lienors need only show one of the three criteria."[21] The movant bears the burden of demonstrating at least one of the criteria is met.[22] Even if a movant meets this burden, the decision to order sale of a vessel is ultimately in the district court's

---

[16] *Id.*
[17] R. Doc. 33.
[18] R. Doc. 55-1 at 1 (Declaration of Commander Damian Yemma, U.S. Coast Guard).
[19] R. Doc. 41-1 at 8.
[20] Fed. R. Civ. P. Supp. E(9)(a)(i).
[21] *Merchants Nat'l Bank of Mobile v. Dredge GENERAL G.L. GILESPIE*, 663 F.2d 1338, 1341 (5th Cir. 1981).
[22] *Triton Container Intern. Ltd. v. Baltic Shipping Co.*, Civ. A. No. 95–0427, 1995 WL 217483, at *2 (E.D. La. Apr. 12, 1995).

discretion.[23] In this case, E.N. Bisso argues all three criteria are met.[24] Defendants contend not one has been met.[25]

E.N. Bisso argues the Vessels are liable to deterioration because, namely, "the Vessels laid dormant from their arrival in New Orleans in late November 2019 until February 24, 2020," "[d]uring that time, the Vessels were anchored near busy navigation lanes of the Mississippi River," and "the Vessels have been reportedly undermanned for days at a time."[26] According to E.N. Bisso, the facts of this case are "virtually identical" to those in *Boland Marine & Mfg. Co., LLC v. M/V A.G. NAVAJO*.[27] In *Boland Marine*, another section of this court held a vessel was liable to deterioration under the following circumstances:

> [T]he vessel was moored near two floating derrick barges in a busy waterway, [] the vessel was not working or earning revenue, [] there was no crew on board, [] no maintenance work had been performed lately, and [] the aft main deck and aft controls were in poor condition. [The vessel owner] concedes that the vessel is not operating and that it has no plans to use it in the immediate future . . . [The vessel's] location in a busy waterway next to floating barges and its continued exposure to the elements with no maintenance or active use is likely to cause deterioration, decay, or injury.[28]

Defendants argue this case is distinguishable from *Boland Marine* for the following reasons:

> The Vessels, both of which were built in 2016, are anchored in a safe berth selected by the Coast Guard in a far less busy waterway; both have crew onboard performing ordinary maintenance; and the Vessels' owners and their representative are working to secure financing to obtain their release from arrest with plans to put the Vessels back into commercial use. Bisso has produced no evidence – none whatsoever – that the Vessels are perishable, deteriorating or decaying as a result

---

[23] *Id.* (noting "the Rule, by using the word 'may', clearly indicates that ordering the sale is not mandatory."). *See also United States v. Approximately 81, 454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) ("Because the rule does not state any criteria to guide the judge . . . [the judge] can range widely in deciding what factors to consider . . . [I]n other words, [the judge] has considerable discretion.").
[24] R. Doc. 41-1 at 9.
[25] R. Doc. 47 at 2.
[26] *Id.* at 10.
[27] No. 02-0658, 2002 WL 31654856 (E.D. La. Nov. 22, 2002).
[28] *Id.* at *3 (internal citations omitted).

of the current arrest.[29]

Although the Vessels are now, thanks to the Coast Guard, anchored in a safe berth, the Vessels have lain idle for approximately three months, not working or earning any revenue. Although Defendants assert they have "plans to put the Vessels back into commercial use," Defendants have produced no evidence to support this statement. At least part of the time since their arrest, the Vessels have been insufficiently crewed, similar to the vessel in *Boland Marine*. As declared by Commander Damian Yemma of the Coast Guard, the Coast Guard took control of the Vessels in part due to "insufficient manning [and] the potential for further crew departures due to lack of pay."[30] Although Defense counsel represented at the March 5, 2020 hearing that the Vessels presently are sufficiently crewed, it appears crew members still have not been fully paid for their past services.[31] At the hearing Defense counsel represented Defendants have a plan to pay back wages of the crew over time. Defendants have submitted no evidence to the Court of financial ability to support this plan. As a result, there is a serious risk crewmembers will depart the Vessels again, leaving the Vessels without necessary crewmembers to maintain the Vessels and further subjecting the Vessels to deterioration. For the foregoing reasons, the Court finds E.N. Bisso has established the Vessels are liable to deterioration.

The Court next addresses E.N. Bisso's argument that Defendants have unreasonably delayed securing release of the Vessels. In assessing the reasonability of a delay, courts consider the length of the delay as well as whether the vessel owner has

---

[29] R. Doc. 47 at 5.
[30] R. Doc. 55-1 at 1.
[31] The Court may consider the failure to pay crew members in determining whether a vessel is liable to deterioration. *See, e.g.*, *Neptune Orient Lines, Ltd. v. Halla Merchant Marine Co., Ltd.*, No. 97- 3828, 1998 WL 128993, at *6 (E.D. La. Mar. 20, 1998) (finding "the vessel is subject to deterioration" and noting "[t]he crewmembers were last paid [roughly three months ago].").

demonstrated active efforts to secure the release of the vessel.[32] The length of the delay is measured starting from the arrest of the vessel at issue.[33] "'As a general rule, defendants are given at least four months to bond a vessel absent some other considerations.'"[34]

The Court first considers whether Defendants have provided any evidence of active efforts to secure release of the Vessels.[35] The only evidence Defendants point to is a Declaration of Martin J. Bouchard, the President and Chief Executive Officer of Bouchard Transportation Company, Inc. Interestingly, Defendants originally filed this declaration in a *separate* matter before the Southern District of Texas involving *different* vessels.[36] The Declaration is dated February 21, 2020, over two weeks ago, and no further evidence or papers on this point have been provided to the Court. Mr. Bouchard has made *no* declaration under penalty of perjury before *this* Court involving the vessels at issue in *this* case. As a result, Defendants have not provided this Court with any evidence of active efforts to secure the Vessels' release or any date by which they expect to do so.

Turning to the length of the delay, the Court notes the Vessels have been under arrest for almost three months.[37] Because defendants are generally given at least four months to bond a vessel,[38] the interlocutory sale should take place no earlier than the four month mark following their arrest.[39] The Court need not wait another month to grant the

---

[32] *Boland Marine*, 2002 WL 31654856, at *2.
[33] *See, e.g, Essex Crane Rental Corp. v. DB Crossmar 14*, Civil Action No. 16-8146, 2016 WL 5869790 at *4 (E.D. La. Oct. 7, 2016).
[34] *John W. Stone Oil Distrib., L.L.C. v. M/V LUCY*, No. 09-4440, 2009 WL 4166605, at *1 (E.D. La. Nov. 20. 2009) (quoting *United States v. F/V FORTUNE*, No. A86–445 Civ., 1987 WL 27274 (D. Alaska Apr. 14, 1987)) (collecting cases).
[35] *Boland Marine*, 2002 WL 31654856, at *2 (finding unreasonable delay four months after arrest of a vessel and explaining vessel owner "provided no evidence of active efforts to secure the vessel's release or any date by which it expects to do so.").
[36] R. Doc. 47-1 at ¶ 1.
[37] The Vessels were arrested on December 18, 2019. R. Docs. 8 and 9.
[38] *John W. Stone Oil*, 2009 WL 4166605 at *1.
[39] *See, e.g.*, *Bank of Rio Vista v. Vessel Captain Pete,* No. C 04–2736CW, 2004 WL 2330704, at *2 (N.D. Ca. 2004) ("'[E]ven if one Rule E(9)(b) criterion is met it is nevertheless inappropriate to order a sale before Defendants have been given a reasonable amount of time to release their property."). *See also Gulf Cooper*

Motion for Interlocutory Sale.[40] The Court finds it appropriate to set the sale date approximately forty-five days from the date of this Order and Reasons. At the time of the sale, over four months will have passed since the Vessels were arrested. "[T]he Court sees no reason why the preliminary steps needed to schedule the sale cannot presently proceed."[41] If Defendants do successfully secure release of the vessel prior to its sale, the execution of that sale shall be stayed.[42]

## **CONCLUSION**

**IT IS ORDERED** that the Motion for Interlocutory Sale[43] is **GRANTED**. The U.S. Marshal for the Eastern District of Louisiana is hereby directed to sell the M/V DONNA J. BOUCHARD and Barge B. NO. 272, and their respective tackle, furniture, apparel, equipment, gear, tackle, appurtenances, etc., (the "Vessels") at public auction to the highest bidder, free and clear of all liens, pre-existing claims, and encumbrances on the Vessels;

**IT IS FURTHER ORDERED** that the auction shall be held on the **28th day of April, 2020, at 10:00 o'clock a.m.**, (the "Auction Date"), in the lobby of the United States Courthouse, 500 Camp Street, New Orleans, Louisiana, with a deadline of seven (7) calendar days prior to the Auction Date for any party to post a bond or otherwise

---

*& Mfg. Corp. v. Rig Viking Prospector*, No. 11-132, 2011 WL 13340596, at *2 (S.D. Tex. May 24, 2011), *recommendation adopted by* 2011 WL 13340642 (S.D. Tex. Jun. 15, 2011).
[40] *See First Am. Title Ins. Co. v. M/V Golden Eagle III*, No. 14-1119, 2014 WL 3891774, at *2 (E.D. La. Aug. 7, 2014) (in case where vessel had been arrested for almost three months, court found expense of keeping vessel was excessive, and explained "[t]he Court will not deny the motion today, only to grant it in one month's time. Refusing the interlocutory sale at this stage would only serve to increase overall maintenance costs, thereby inhibiting Plaintiff's ability to minimize its losses.").
[41] *Gulf Cooper*, WL 13340596 at *2.
[42] Because E.N. Bisso need only show one criterion under Rule E(9)(a)(i) to establish an interlocutory sale of the Vessels is warranted, *Merchants*, 663 F.2d at 1341, the Court need not address E.N. Bisso's additional argument regarding excessive or disproportionate expense, *Prosperity Bank v. Tom's Marine and Salvage, LLC, et al.*, No. 18-9106, 2020 WL 777294, at *5 (E.D. La. Feb .18, 2020).
[43] R. Doc. 41.

secure release of the Vessels, and that the auction shall be conducted upon notice and the terms of sale contained below:

**IT IS FURTHER ORDERED** that E.N. Bisso shall advertise notice of the sale pursuant to Local Admiralty Rule 64.6 in the New Orleans Times-Picayune/ the New Orleans Advocate on three different days, the first of which must be published at least fourteen (14) days before the sale, the last at least three (3) days before the day of the sale, and the second advertisement may be published any day in between the first and last advertisement. The notice will state the time and place where the auction will be conducted and will provide information on how prospective bidders may arrange to board the Vessels for the purposes of inspecting them. The notice will also advise that the highest bidder will be required to deliver to the United States Marshal by 2:00 PM on the day of the sale, by certified check or cashier's check drawn on a local bank, a deposit of no less than ten (10%) percent of the bid price, the balance to be paid by certified or cashier's check drawn on a local bank on or before the confirmation of the sale by the Court and within fourteen (14) of the adjudication or dismissal of any opposition which may have been filed;

**IT IS FURTHER ORDERED** that in the event that one or both Vessels are not sold at the auction, then a second auction may be ordered upon ex parte motion by E.N. Bisso;

**IT IS FURTHER ORDERED** that at the conclusion of the auction, the U.S. Marshal shall forthwith report to the Court the fact of the sale, the price brought, and the name of the buyer, and the clerk shall endorse upon such report the time and date of filing. This report shall lie over for three (3) days, exclusive of Saturdays, Sundays, and legal holidays. If within those three (3) days no written objection is filed, the sale shall be

confirmed as of course, provided that no sale shall be confirmed until the buyer shall have performed the terms of the purchase.

**IT IS FURTHER ORDERED** that E.N. Bisso, is permitted to, but not required to, advertise the auction in other publication(s) of its choosing, with the reasonable expenses of marketing and publication to be charged as a *custodia legis* expense;

**IT IS FURTHER ORDERED** that should a potential buyer request to view the Vessels in person, the potential buyer agrees to hold harmless and indemnify the substitute custodian and the U.S. Marshal and all of his deputies from any and all liability arising thereupon. Inspection of either Vessel may be arranged through the U.S. Marshal's Service, 500 Poydras Street, Room 724, New Orleans, Louisiana 70130 by executing a Waiver and Release from Liability form acceptable to the U.S. Marshal's Service Office and presenting a picture ID.

**IT IS FURTHER ORDERED** that after the Court has confirmed the sale of the Vessel(s), the Marshal shall deliver Bill(s) of Sale for the Vessel(s) to the confirmed purchaser(s), and the Vessel(s) shall be conveyed as is where is, free and clear of all liens, claims, and encumbrances of any nature whatsoever;

**IT IS FURTHER ORDERED** that all charges incurred or commissions charged by the U.S. Marshal (including but not limited to dockage, wharfage, and insurance), all other court approved charges incurred by E.N. Bisso or any other court-approved charges, with respect to the maintenance and safe-keeping of the Vessels, and all costs of marketing and advertisement of the notice of sale and notice of seizure shall be taxed in priority as *custodia legis* expenses of the vessels against the proceeds of the sales;

**IT IS FURTHER ORDERED** that the United States Marshal shall deposit any proceeds of the sales into the Court registry pending further order of the Court. The Clerk of Court is directed to deposit the funds into an interest-bearing account;

**IT IS FURTHER ORDERED** that the Bouchard Transportation Co., Inc. and any affiliate thereof shall cooperate in good faith with efforts to sell the Vessels to the highest bidder; and

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this case for such further proceedings as may be appropriate.

**New Orleans, Louisiana, this 10th day of March, 2020.**

*[Signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**